IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEGENCE BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15–cv–0144–MJR–DGW |
| | ) |
| UNITED MINE WORKERS OF AM., and UMWA LOCAL 5929, | ) ) ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM & ORDER**

**REAGAN, Chief Judge:**

The common logical fallacy called "denying the antecedent" is an argument of the following form: "If p, then q. Not p. Therefore, not q." ***TorPharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1329 n. 7 (Fed. Cir. 2003).** As one learned judge recently illuminated, the logic is flawed:

> The following propositional fallacy is a common illustration: if I go to the drug store then I will buy milk. If one denies the antecedent, then one would posit that if I do not go to the drug store I will not buy milk. Of course, the logical disconnect is obvious because one could buy milk at a location other than the drug store.

*Posen Constr., Inc. v. Lee Cnty.*, **921 F.Supp.2d 1350, 1364 n. 9 (M.D. Fla. 2013).** *Accord New England Power Generators Ass'n, Inc. v. F.E.R.C.*, **707 F.3d 364, 370 (D.C. Cir. 2013).**

In this interpleader action, two adverse parties—the United Mine Workers of America ("UMWA") and its Local 5929—lay claim to funds formerly held in accounts at Legence Bank (which has been dismissed from the action). UMWA recently disbanded Local 5929. By asserting that the UMWA Constitution enumerates specific grounds for which UMWA *can* disband a local chapter, then arguing the lack of those specific grounds means UMWA *cannot* disband a local chapter, Local 5929 puts the logical fallacy at the heart of its argument.

The parties have filed cross-motions for summary judgment, and the matter is ripe for ruling. For the reasons explained below, the Court GRANTS summary judgment in favor of UMWA.

## BACKGROUND

At summary judgment, the court views the record and all reasonable inferences drawn from it in the light most favorable to the nonmoving party. *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, **780 F.3d 784, 789 (7th Cir. 2015);** *Fulk v. Utd. Transp. Union*, **160 F.3d 405, 407 (7th Cir. 1998).** Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Simpson*, **780 F.3d at 789.**

The relationship between UMWA and its local unions is governed by the "Constitution of the International Union — United Mine Workers of America"

("UMWA Constitution"). The current iteration of that document became effective in July 2010.

Article 3 establishes UMWA's jurisdiction and structure. UMWA is divided into Districts, Sub-Districts, and Local Unions. **Article 3, § 2.** UMWA has "supreme legislative, executive and judicial authority over all members and subordinate branches," and is "the ultimate tribunal to which all matters of importance to the welfare of the membership and subordinate branches shall be referred." *Id.* The International Executive Board "may approve any affiliation or merger with an existing labor organization, presented to it by the Executive Officers, so long as such action preserves the character and integrity of the Union and is the best interest of the Organization." *Id.* "All … Local Unions must be chartered by, and shall be under the jurisdiction of and subject to the laws of [UMWA] and the rulings of the International Executive Board." **Article 3, § 3.** Any International Executive Board action must "insure that the democratic rights of UMWA members as heretofore practiced shall be preserved and that the membership dues or assessments shall not be increased except as such increases currently provided under this Constitution" *Id.*

Article 10 concerns local unions, which it defines as "self-governing bodies of the International Union, charged with carrying on the work of the Union in their jurisdiction." The article provides a specific situation in which UMWA may disband a local union and order its members transferred to another:

> If a Local Union has less than ten (10) dues paying members for a period of more than one year, and the International Executive Board determines that the maintenance of such Local is no longer in the interest of the Organization, the International Executive Board may direct the International Secretary-Treasurer to order said Local disbanded and to order the transfer of the remaining members to an appropriate Local Union.

**Article 10, § 2(b).** A separate provision limits a local union's power once it is disbanded:

> No Local Union shall divide its funds among its members or use its funds for purposes other than furthering the objects of the Union. When a Local Union is disbanded, its charter is revoked, or it attempts to sever its ties with the International Union, all of its funds and other assets shall become the property of the International Union.

**Article 10, § 11.**

From its inception in May 2011, Local 5929 was headquartered in Harrisburg, Illinois. According to its president, Local 5929 has twelve (and has always had ten or more) dues-paying members. In October 2014, Local 5929's president received a letter from UMWA, advising him that the International Executive Board had voted to merge Local 5929 with Local 1740 (headquartered in Uniontown, Kentucky). The local president was asked to assist the district vice president in collecting assets, records, files, and the local seal, and further told not to spend or transfer any assets of Local 5929 (except in accordance with Local 1740's bylaws). By subsequent letter, UMWA asked Legence Bank, which held Local 5929's funds, to freeze those assets.

Legence Bank filed an interpleader action in Saline County, Illinois (Case No. 2014-CH-32), and deposited the funds from two accounts (a checking account and

4

certificate of deposit account) with the Circuit Clerk of Saline County. UMWA and Local 5929 filed respective claims to the funds, and UMWA removed the action to this Court in February 2015. The undersigned enjoys subject matter jurisdiction over the case under 29 U.S.C. § 185(a), which provides that lawsuits "for violation of contracts between an employer and a labor organization … or between any such labor organizations" may be brought "without respect to the amount in controversy or without regard to the citizenship of the parties." **29 U.S.C. § 185(a)**.[1]

The parties have filed cross-motions for summary judgment as well as responses, so the matter is ripe for ruling. In light of the longstanding policy of noninterference with internal union affairs, and because UMWA's interpretation of its own constitution cannot be said to be unreasonable—much less "patently unreasonable"—the Court grants summary judgment to UMWA.

## ANALYSIS

Local 5929 makes several arguments against UMWA's position that its interpretation of and actions under the UMWA Constitution were reasonable. First, Local 5929 posits that UMWA's merging of Local 5929 into Local 1740 contravened

---

[1] Though the parties do not raise the issue, there is some support (albeit old) for the notion that the UMWA constitution, insofar as it crystallizes an agreement between the International and Local Unions, is not a contract *between* labor organizations as contemplated by the statute. *See* **Utd. Bhd. of Carpenters & Joiners v. Sidell**, **552 F.2d 1250, 1255–56 (7th Cir. 1977)**. In light of the Seventh Circuit's recent assertion of jurisdiction over disputes between international unions and their locals, *see*, *e.g.*, **Transport Workers Union of Am., AFL-CIO v. Transp. Workers Union of Am., AFL-CIO, International Union**, **732 F.3d 832 (7th Cir. 2013)**, the prudential route here is to likewise assert jurisdiction, but to keep in mind that courts "should be chary of extending the scope of [the statute] to comprehend federal court involvement in the control and supervision of purely internal union disputes," *Sidell*, **552 F.2d at 1255.**

Article 10, § 2. Secondly, Local 5929 points to Article 3's language and asserts UMWA's actions neither "preserve[d] the character and integrity" of the union nor "insure[d] the democratic rights of UMWA members." Lastly, Local 5929 argues it was not provided sufficient justification for being disbanded and merged with a neighboring local.

Where, as here, the dispute hinges on the meaning of a union constitution, courts defer to the union. *Fulk v. Utd. Transp. Union*, **160 F.3d 405, 407 (7th Cir. 1998).** The longstanding federal policy towards internal union affairs is one of noninterference. *Id.* **at 408 (citing** *Local 657, Utd. Bhd. of Carpenters v. Sidell*, **552 F.2d 1250 (7th Cir. 1977)).** That policy requires courts to give deference to a national union's interpretation (as opposed to the local union's interpretation) of its own constitution. *Transp. Workers Union of Am., AFL-CIO v. Transp. Workers Union of Am., AFL-CIO, Int'l Union*, **732 F.3d 832, 835 (7th Cir. 2013).** For a court to set aside a union's interpretation of its constitution, that interpretation must be shown to be unreasonable—"perhaps even patently unreasonable." *Transp. Workers*, **732 F.3d at 835 (citing** *Fulk*, **160 F.3d at 408).**

In *Transport Workers*, the Seventh Circuit affirmed the grant of summary judgment to a national union and against its local where the national had merged five local unions into one. *Transp. Workers*, **732 F.3d at 835**. The Court first looked to how much authority was granted to the national leadership, which it reasoned had "broad powers over Locals" because the national leadership could "interpret" and "enforce" the constitution. *Id.* According to the constitution there, "supreme authority" lay with

6

the parent union; the Court concluded the constitution "granted nearly plenary power to the [national] leadership over subordinate local unions." *Id.*

That being the case, the burden lay with the local unions to show how the leadership's interpretation conflicted with the stark and unambiguous language of the constitution, or read important provisions out of the constitution. *Id.* **at 835–36.** The locals' blanket assertion that the national's interpretation conflicted with eight provisions of the constitution was flatly rejected due to the deference shown the national leadership. *Id.* **at 836.** Finally, the lack of express provision allowing for consolidation of locals was not fatal to the national's position, given the plenary power granted by the constitution and language that could reasonably be construed to give the national union authority to revoke a local's charter. *Id.*

*Transport Workers* built on a foundation laid by two older Seventh Circuit cases. In *Fulk*, a union constitution required a "majority" of votes to approve a buyout proposal, and in polling its members the leadership used a different voting procedure than it had in the past. *Fulk***, 160 F.3d at 407–08.** The Court held it unnecessary to parse the parties' readings of the word "majority." *Id.* **at 409.** Instead, it looked only to whether the union's interpretation of the word was "unreasonable." It was not; the constitution did not "plainly bar" the leadership's approach. *Id.*

In *Sidell*, the Court of Appeals hinted there would be no jurisdiction over an "internal structural change with no extrinsic effects . . . alleged to impact adversely on

7

the local's relationships with its customary employers." *Utd. Bhd. of Carpenters & Joiners of Am. v. Sidell*, **552 F.2d 1250, 1255 (7th Cir. 1977).** It did, however, conclude that federal courts have jurisdiction where the "dispute is resolvable on written instruments . . . so that the district court need not divine the governing principles out of an ephemeral custom established by the distillation of a welter of motions and cross-motions." *Id.*

Here, as in *Transport Workers*, the UMWA Constitution gives sweeping powers to the parent union, which has "supreme legislative, executive and judicial authority over all members and subordinate branches." **Article 3, § 2.** Local Unions are "chartered by" and "under the jurisdiction of and subject to the laws of" the parent union "and the rulings of the International Executive Board." **Article 3, § 3.** Such "nearly plenary" power having been granted to UMWA, it falls upon Local 5929 to show a conflict with the stark and unambiguous language of the UMWA Constitution. *Transp. Workers*, **732 F.3d at 835–36.** Such a conflict does not exist.

By advancing the notion that "the democratic rights of UMWA members" were not "insured" as required by the UMWA Constitution, Local 5929 ignores an important clause. Those democratic rights must be preserved "as heretofore practiced." **Article 3, § 3.** Examining how Locals and UMWA have "heretofore practiced" democratic, representative practices would amount to "divin[ing] . . . governing principles out of an ephemeral custom," something forbidden by Seventh Circuit precedent. *See Sidell*, **552**

8

**F.2d at 1255.** Such an exercise would put the Court in the position of policing "an internal structural change with no extrinsic effects" on labor / employer relations, *id.*, thereby running afoul of the federal policy of noninterference towards internal union affairs, *Fulk*, **160 F.3d at 407.**

A reasonable reading of the UMWA Constitution puts to bed two other arguments against Local 5929's merger into Local 1740. Whether merging the two locals "preserved the character and integrity" of the union and whether there was "sufficient justification" for effectively disbanding Local 5929 are matters left to UMWA, the "supreme legislative, executive and judicial authority over all members and subordinate branches." **Article 3, § 2.** As in *Transport Workers*, no express provision governs consolidation of locals in every situation, but there is ample textual support for the notion that dissolution and mergers are within the International Executive Board's scope of authority. There, though no finding of the merged locals' inadequacy was part of the record, the constitution allowed the executive council to revoke a local's charter or require it to merge if, "in the opinion of the [council]," the local can no longer properly perform its functions. *Transp. Workers*, **732 F.3d at 832.** The council there clearly had the authority to make decisions like revoking, merging, dissolving, or similar actions vis-à-vis its locals. Here, it is eminently reasonable to conclude the International Executive Board—given its sweeping powers—is the entity entitled to

"disband" a Local Union, **Article 10, § 11**, revoke its charter, *id.*, or order the transfer of one Local's members to another, appropriate Local, **Article 10, § 2(b).**

That leaves only Article 10, § 2 of the UMWA Constitution as a textual Hail Mary for Local 5929. But that provision, which allows merger of one Local with another when membership drops below ten members, does not *limit* UMWA's International Executive Board in other circumstances. According to Local 5929:

> **If membership drops under 10, UMWA may merge one local with another.**
> **Membership did not drop under 10.[2]**
> **Therefore, UMWA may not merge one local with another.**

But as discussed in the introduction to this Order, that logic—"denying the antecedent"—is flawed. Local 5929 points to no provision that makes Article 10, § 2 the *exclusive* font of authority for merging two Locals. ***See also Transp. Workers*, No. 13 C 01415, 2013 WL 1103875, at \*7 (N.D. Ill. March 15, 2013) (provision guiding revocation of charter in one circumstance "does not state that a Local's charter *cannot* be revoked") (emphasis there).** Rather, a reasonable interpretation of the UMWA Constitution's Articles 3 and 10 gives UMWA's International Executive Board the inherent power to disband, merge, or revoke the charter of a Local by—as it undisputedly did, by vote, in October 2014.

Quite simply, Local 5929 invokes no case in which a court found a national union's interpretation of its own constitution to be unreasonable. That the UMWA

---

[2] UMWA does not cede that Local 5929's membership stayed above the ten-member cutoff, but that issue of fact is immaterial given UMWA's reasonable interpretation of its own constitution.

10

Constitution enumerates one specific ground in which Locals may be merged does *not* mean UMWA's International Executive Board is forbidden from disbanding a Local, revoking its charter, or merging it with another Local. UMWA's interpretation of its expansive power to regulate Local Unions cannot be said to be unreasonable, so merging Local 5929 with Local 1740 was permissible under the UMWA Constitution and controlling caselaw.

## CONCLUSION

For the reasons articulated above, the Court **GRANTS (Doc. 6)** the motion for summary judgment filed by United Mine Workers of America, and **DENIES (Doc. 12)** the cross-motion filed by UMWA Local 5929. The Clerk **SHALL** enter final judgment in favor of United Mine Workers of America, and against UMWA Local 5929. The funds previously held in Legence Bank account nos. xxx440 and xxx246, which have since been deposited with the Circuit Clerk of Saline County, Illinois, **SHALL** be **TRANSFERRED** to the United Mine Workers of America.

IT IS SO ORDERED.
DATE: <u>September 16, 2015</u>    s/ *Michael J. Reagan*
       **MICHAEL J. REAGAN**
       Chief Judge
       UNITED STATES DISTRICT COURT